## 9061. SMITH *et al. v.* THE STATE.

1. The alleged newly discovered evidence as set out in the affidavit attached to the motion for new trial is too ·indefinite to be of any value as evidence, and is not such as would probably cause a different verdict on another trial.

2. The evidence, though entirely circumstantial, authorized the verdict, and the trial judge did not err in overruling the motion for new trial.

· DECIDED OCTOBER 31, 1917.

Accusation of possessing intoxication liquor; from city court of Jefferson—Judge Mahaffey. July 6, 1917.

*W. W. Stark,* ·for plaintiffs in error.

*S.· J. Nix, solicitor,* contra.

HARWELL, J. The defendants were found guilty of being in possession of more 'than two quarts of intoxicating liquor. They made a motion for new trial on the general grounds, and upon the special ground of newly discovered evidence, which was overruled, and they excepted. The testimony for the State was circumstantial. It shows that on the morning of September 22, 1916, at two or three o'clock, the defendants were seen by a policeman to pass through Maysville in a car. There was a bulk of something in the back of the car. The top of the car was up and the defendants had what looked like an apron or lap-robe. The State's witness, the policeman, had suspected the defendants of transporting liquor, and attempted once before to stop the car of the defendant Smith, but the latter would not stop. On this occasion he threw his light in front of them and tried ·to get them to stop but they would not. Witness heard, the following day, that this car had broken down near Maysville, and in the afternoon went down there and found the defendants and the car. They had stopped in a corn patch, about three feet from the road. Nothing was in the car except a storm apron. He began to search in the brush around and near the car, and found twenty gallons of liquor in a keg under a brush pile; out from that a little piece he found a fifteen-gallon keg under another brush, a five-gallon keg up further in the woods, and another five-gallon keg, or can. The car was not even with the kegs, it was a little to the left of the kegs. The kegs had no label or revenue marks on them. There were two other men with the defendants when the policemen arrived. The stopper was out of the first keg the witness saw. The defend-

ants were sworn for each other, and each made also a statement in his own behalf. They denied having any knowledge of the liquor, and claimed that the axle of the car had broken, and that the defendant Smith had left Daniel with the car and had gone to Athens to get assistance, in order to repair it, and had found his nephew Benton in Athens and had returned with Benton and another man to assist him in repairing the car. These were the other two men who were present when the policeman arrived in the afternoon. Smith further claimed, in explanation of his trip, that he lived in White county, and that he was going to Madison county to get Benton, his nephew, and take him to see his (witness's) father, who was then about to die. The defendant Daniel stated that he had remained with the car while the other defendant went to Athens, and said that he did not know when Smith left the car that morning to go to Athens, but that Smith got back about three o'clock in the afternoon; that he got out on the other side of the road and went to sleep under some trees and slept a part of the day; he heard automobiles pass that day, he didn't know how many; that after Smith left no car stopped there and put out anything; that no car stopped. No explanation was made as to what had become of the bulk of something which the policeman saw in the back of the car. No explanation was made of the failure of the defendant Smith to stop when the policeman attempted to stop his car. Benton, the nephew, who lived in Madison county, stated that Smith had not let him know that he was coming after him in an automobile, that he never had been after him before, that he went to White county, but that it was eight or ten days after this. The testimony further showed that nothing was placed over the five-gallon keg, but it could not be seen from the road; nothing but some oak brush was over the rest. There was no mark of any kind on the kegs.

The alleged newly discovered evidence is based on the affidavits of one Culberson and one Adams.. The record shows no supporting affidavit in reference to Adams, and his affidavit will not be considered. The supporting affidavit in reference to Culberson is hardly a compliance with the requirement of the law that it must show the witness's residence, associates, character, and credibility, and means of knowledge.. The affidavit is simply to the effect that on the evening of the 21st of September, about dark, the

deponent passed along the public road between Maysville and Commerce, near the place where Mr. Highfield lives, where there is a small body of woods; that as he passed he saw some parties, and from their appearance thought they had some whisky, made inquiry if he could get some, was informed that he could, and got about two quarts. The next day he heard about a car being broken down near this place. We think that this affidavit is too indefinite to be of any value as evidence. It is not shown by the affidavit of this witness who the parties were that the witness claimed to have seen. The affidavit does not show that this is the same place where the defendant's car was broken down and where the policeman found the whisky. It is not probable, therefore, that a different result would be produced on another trial by the submission of this evidence. We think, therefore, that the court did not err in overruling this ground of the motion for a new trial.

The evidence, while circumstantial, in our opinion authorized the verdict. The evidence connecting the defendants with this liquor found near their car by the policeman, it is true, is weak, but there are some things in the evidence which are not explained by the defendants, and there was no attempt at explanation. No explanation was offered by them of the bulk of something which the State's witness saw in their car as it passed through Maysville. It is hardly probable that other parties would have placed this liquor under the brush near the road and left it there during the day without some of them being seen near by. One of the defendants himself said that no automobile stopped there during the day. A mind seeking for the truth would hardly come to any other conclusion from the evidence than that this bulk of something which loomed up in the car as it passed through Maysville was this liquor, and that when the defendants' car broke down on the side of the road they removed it to the hiding places in the nearby brush pile, where it was found by the State's witness.

*Judgment affirmed. Broyles, P. J., and Bloodworth, J., concur.*